# **<u>EXHIBT C</u>**

→ AKent @ rincongroup-
Com

1   K. Andrew Kent, State Bar No. 130097
    RINCON VENTURE LAW GROUP
2   2815 Townsgate Rd., Suite 215
    Westlake Village, California 91361
3   Telephone: (805) 557-0580
    Facsimile: (805) 557-0480
4
    Attorneys for Plaintiffs
5   SUNLIGHT PRODUCT TECHNOLOGIES, LTD.
    AND DAVID JOSEPH BUNEVACZ
6

VENTURA
SUPERIOR COURT
FILED

NOV 0 6 2013

MICHAEL D. PLANET
By: _____ Deputy
LESLIE CARLIN

VIA FAX

7                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                          FOR THE COUNTY OF VENTURA

9

10  SUNLIGHT PRODUCT TECHNOLOGIES,          )   Case No.    56-2013-00444650-CU-BT-VTA
    LTD., a Hong Kong Corporation, and DAVID )
11  JOSEPH BUNEVACZ, an individual,         )   COMPLAINT for:
                                            )   (1) Misappropriation of Trade Secrets
12                  Plaintiffs,             )   under CAL-UTSA;
                                            )   (2) Breach of Contract;
13          vs.                             )   (3) Unfair Business Practices
                                            )   (4) Declaratory Relief
14  MPOWERD INC., a New York corporation,   )
    JACQUES PHILIPPE PIVERGER, and DOES     )
15  1 through 20, inclusive,                )
                                            )
16                  Defendants.             )
                                            )
17

18

19         Plaintiffs Sunlight Product Technologies, Ltd, ("Sunlight") and David Joseph Bunevacz

20  ("Bunevacz")  for their Complaint against Defendants MpowerD Inc., Jacques Philippe Piverger,

21  and Does 1 through 20 (collectively "Defendants") allege on knowledge as to themselves and on

22  information and belief as to all other matters, as follows:

23                              COMMON ALLEGATIONS

24         1.    Plaintiff Sunlight is a Hong Kong limited corporation engaged in the business of

25  design and development of lighting products. Plaintiff Bunevacz is an individual residing in

26  Santa Clarita, California.

27         2.    On information and belief, Defendant MpowerD Inc. ("MpowerD") is a

28  corporation formed organized under New York laws and having a place of business in New

                                            1
                                        COMPLAINT

York, New York.  On information and belief, Defendant Piverger is an individual and has a residence in or near New York, New York.  At all relevant times, Piverger has been the chief executive officer of MpowerD.

3.     Doe Defendants 1 through 20 are sued by fictitious names because their identities and capacities, whether individual, corporate, associate or otherwise, have yet to be sufficiently determined by Plaintiff.  On information and belief, Does 1 through 20 are persons or entities who otherwise have been affiliated with MpowerD in some manner, and each has either direct, contributory or vicarious liability for the wrongful acts alleged below.

4.     On information and belief, at all relevant times, each of the Defendants was the agent of each of the remaining Defendants, and in doing the things alleged herein, was acting within the scope of such agency.  On information and belief, the conduct of each of the Defendants as alleged herein was ratified by each of the other Defendants, and the benefits thereof were accepted by each of the other Defendants.

5.     On information and belief, each of the Defendants induced the other Defendants to violate Plaintiffs' rights, participated in, aided, abetted and enabled the other Defendants to engage in the unlawful conduct herein alleged, or supervised that conduct, with knowledge that the conduct of the other Defendants would violate Plaintiffs' rights, and constitute tortious conduct and unfair competition.  Therefore each of the Defendants is jointly and severally liable for the wrongful acts alleged below.

6.     Bunevacz is a California businessman who resided in Hong Kong and other Asian cities for over 14 years, and who has maintained strong business and family relationships there since returning to the United States.  During his tenure in Asia, Bunevacz built over the course of a three-year period a state of the art automated manufacturing facility that began producing non-flammable advanced micro-electronic devices sold as electronic cigarettes in 2005.  Through a

2
COMPLAINT

corporation he founded, Holy Smokes USA LLC, he has become one of the largest importers of custom e-cigarettes in the United States.   Mr. Bunevacz's Holy Smokes business has expanded into the design, manufacture and production of other consumer products.   Examples include several different types of vaporizers now produced by Mr. Bunevacz, among them the leading seller of multi-use vaporizers in the United States, and a soon-to-be launched vaporizer that is expected to be the most advanced product of its kind on the market.

7.     At all relevant times, Gunderson has been a director of MpowerD, as well as being Bunevacz's brother-in-law.   In or about March 2012, Gunderson contacted Bunevacz about MpowerD, which was described to him as a start-up company seeking to establish a niche selling lighting products to retail customers.   Gunderson explained that MpowerdD sought a manufacturer that could reverse engineer and produce a popular lighting product sold in the retail marketplace by a competitor, and believed Bunevacz, through his product development and manufacturing background, in addition to his Chinese relationships, would be in a position to produce reverse-engineered, finished product of this kind to MpowerD.   Gunderson thereupon introduced Bunevacz to Pivenger, who was described to Bunevacz as chief executive of MpowerD.   Following discussions with Bunevacz, Piverger prepared and provided to Bunevacz a written agreement for production of solar powered lights for purchase and re-sale by MpowerD ("Production Contract").   The Production Contract contained the following provisions of relevance:

"Each Party [to the Production Contract, namely mPowerD and Bunevacz] agrees and undertakes that during the term of this Agreement and thereafter it shall keep confidential and shall not use for its own purposes all information of a confidential nature (including, without limitation, information relating to a Party's business, know-how, processes,

---

3

COMPLAINT

product information, and trade secrets) which may become known to that Party from the other Party ("Confidential Information"),

[¶] "Either Party's Confidential Information shall be maintained in strictest confidence by the other Party and shall be treated as the other Party would treat its own Confidential Information. It may only be used for the sole purpose of assisting that other Party in adequately discharging its obligations hereunder. Such Confidential Information shall not be disclosed to any third party, without prior written consent from the other Party or unless required by local law. This obligation shall survive the termination of this Agreement for seven (7) years from the end of the contract."

With the understanding, confirmed by the Production Agreement, that information he provided to MpowerD and Piverger would be safeguarded against misuse, Bunevacz thereupon reverse-engineered the popular third-party product at his own expense, creating CAD (computer-aided design) technical drawing files and renderings in electronic format, again at his own expense, which were delivered to Gunderson for review of the lighting product Bunevacz proposed to produce on a large scale for purchase and re-sale by MpowerD.

8.     At or about the time Bunevacz's CAD files were delivered to MpowerD, Bunevacz advised MpowerD executives, including Piverger, that he could design and produce a lighting product that in his estimation would have features different from and preferable over those of the knock-off of a competitor's product that MpowerD had been seeking to purchase and re-sell. Piverger resisted the idea of MpowerD purchasing a lighting product that diverged from MpowerD's plan to retail a knock-off of the competitor's product.

9.     In or about May 2012, through his own resources, Bunevacz prepared a newly designed and innovative lighting product in a cylindrical, lantern shape. In or about June 2012,

samples, CAD files and renderings for Bunevacz's innovative lantern product were provided to MpowerD to assist its consideration whether it wished to order a production of Bunevacz's innovative lantern product.   In or about September 2012, a production run of Bunevacz's lantern product was delivered to MpowerD, which sold the units to the government of Haiti.

10.   In or about October 2012, Bunevacz began working with Eli Probst and Todd Metlen on further improvements and enhancements to the design, materials and functioning of Bunevacz's innovative lantern product.  Probst and Metlen at all relevant times have been residents of Ventura county, California and do business principally in Ventura county, California.  At all relevant times, Probst and Metlen were the principals of the product design, development and manufacturing company Blue Ox Industrial Co., Ltd.  Probst and Metlen are the creators and designers of numerous patented inventions, having developed acclaimed consumer products for companies such as Nokia, Blue Microphones, BMW, Siemens, Compaq, Samsonite and Johnson & Johnson, among others.  Bunevacz, Probst, and Metlen then created and incorporated additional design improvements upon Bunevacz's lantern product, and electronic CAD files and renderings were provided to MpowerD in order to assist its decision whether to order a production of the newest generation lantern from Bunevacz, and, if ordered, where standard corporate logos for MpowerD as retailer would be affixed to or printed on the product.  MpowerD thereupon ordered approximately 500 units for promotion, use and sale at an event in October 2012.

11.   In or about November 2012, Bunevacz, Probst and Metlen created additional innovations for lighting products, and developed a cutting-edge lantern product that is waterproof, collapsible, solar-powered and constructed from superior materials. In early to mid-2013, they investigated patent protection for those innovations that were patentable.  In June

2013, Bunevacz, Probst and Metlen as co-applicants filed for design patent protection with the United States Patent and Trademark Office based on the inflatable, solar powered lantern design inventions of the three of them (U.S. Patent Application No. 29/458,395('395 application)). In July 2013, they together formed Sunlight in order to commercialize their unique lantern products, and Bunevacz, Probst and Metlen ("Sunlight Assignors") then assigned to Sunlight all their rights in and to the inventions described in the '395 application.

12.     As alleged above, in 2012, Bunevacz, Probst and Metlen created CAD files, product renderings and other tangible information relating to the design and manufacture of lighting products, all of which they maintained and secured in a confidential, proprietary manner ("Proprietary Lantern Production Material"). The Proprietary Lantern Production Material was developed in substantial part in Ventura and Los Angeles counties, California. The Proprietary Lantern Production Material was created through the individual and combined resources, facilities, equipment and manpower of Bunevacz, Probst and Metlen. MpowerD and Piverger were provided confidential access, in substantial part from Ventura and Los Angeles counties, California, to the Proprietary Lantern Production Material. This access was for a limited purpose: to facilitate discussions between Bunevacz and MpowerD as to proposed orders by MpowerD for production and delivery of lighting products designed, developed and produced by Bunevacz, Probst and Metlen. At no time were any of Plaintiffs', or Probst or Metlen's, rights in the Proprietary Lantern Production Material assigned to MowerD or Piverger. On information and belief, MpowerD and Piverger each was aware of the facts stated in this paragraph. On information and belief, each of them further understood that their access was conditional, and that they were not authorized to use the Proprietary Lantern Production Material for their own purposes unrelated to ordering product from Bunevacz.

13. On information and belief, MpowerD and Piverger have made unauthorized uses of the Proprietary Lantern Production Material. On information and belief, their unauthorized uses include, but are not limited to, providing the Proprietary Lantern Production Material to a factory in China for production of lighting products that MpowerD has sold or plans to sell; applying for patent protection based on inventions described in the Proprietary Lantern Production Material, while fraudulently failing to disclose those inventions were invented by, and their ownership held by, Bunevacz, Probst and Metlen; otherwise wrongfully asserting ownership of the Proprietary Lantern Production Material; and attempting to compete with Bunevacz, Probst, Metlen and Sunlight through the unfair advantage of using what they learned in confidence from the Proprietary Lantern Production Material.

## FIRST CAUSE OF ACTION

(Misappropriation of Trade Secrets; Cal. Civ. Code § 3426 et seq.; against all Defendants)

14. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 13 above, as if stated here in full.

15. The Proprietary Lantern Production Material at all relevant times derived actual or potential independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

16. The Proprietary Lantern Production Material had been the subject of reasonable efforts by Bunevacz, Sunlight and the Sunlight Assignors to maintain its secrecy.

17. Some or all of the Proprietary Lantern Production Material constituted trade secrets ("Lantern Trade Secrets") within the meaning of California Civil Code Section 3426.1.

18. Ownership of the information constituting Lantern Trade Secrets has in part if not in its entirety been assigned to Sunlight by the Sunlight Assignors. Bunevacz joins in this claim as to any information constituting Lantern Trade Secrets that has not, as of the filing of this Complaint, been assigned to Sunlight.

19.   On information and belief, MpowerD and Piverger, and Does 1 through 20 acquired the Lantern Trade Secrets knowing or having reason to know that they had been acquired by improper means.

20.   On information and belief, MpowerD and Piverger and Does 1 through 20 disclosed or used the Lantern Trade Secrets without express or implied consent for the use or disclosure, after using improper means to acquire knowledge of the Lantern Trade Secrets.

21.   On information and belief, MpowerD and Piverger and Does 1 through 20 disclosed or used the Lantern Trade Secrets without express or implied consent for the use or disclosure, despite knowing or having reason to know at the time of that disclosure or use that its, his, her or their knowledge of the Lantern Trade Secrets had derived from or through improper means of acquiring them, or derived from or through a duty to maintain their secrecy or limit their use and disclosure.

22.   On information and belief, MpowerD and Piverger and Does 1 through 20 disclosed or used the Lantern Trade Secrets without express or implied consent for the use or disclosure, before the occurrence of a material change in its, his, her or their position, while knowing or having reason to know the Lantern Trade Secrets were trade secrets and that its, his, or their knowledge of them had been acquired by accident or mistake.

23.   On information and belief, MpowerD and Piverger and Does 1 through 20 misappropriated the Lantern Trade Secrets. On information and belief, their misappropriation was willful and malicious.

24.   On information and belief, Defendants have caused damage to Plaintiffs as a direct and proximate result of their acts of misappropriation, in an amount to be proven at trial. On information and belief, Defendants have profited from their acts of misappropriation, in amounts to be proven at trial. On information and belief, Defendants have been unjustly enriched as a result of their acts of misappropriation. On information and belief, Defendants have obtained commercial advantage derived from their acts of misappropriation.

25.   On information and belief, MpowerD and Piverger and Does 1 through 20 threaten to misappropriate the Lantern Trade Secrets, or threaten to further misappropriate them,

8

COMPLAINT

1  continue their misappropriation or extend their misappropriation, all within the meaning of
2  California Civil Code Section 3426.2. Provisional, temporary, preliminary and final injunctive
3  relief is necessary to stop and prevent Defendants' actual or threatened misappropriation of the
4  Lantern Trade Secrets, and eliminate the commercial advantage Defendants derived from
5  misappropriating them.

6

7                           SECOND CAUSE OF ACTION
8                        (Breach of Contract; against MpowerD)
9         26.    Plaintiff Bunevacz incorporates by reference the allegations of Paragraphs 1
10 through 25 above as if set forth in full.
11        27.    In or about April 2012, Bunevacz and MpowerD entered into the Production
12 Contract.
13        28.    Bunevacz has performed all conditions, covenants, and promises required on its
14 part to be performed under the Production Contract.
15        29.    As described above, MpowerD was provided, by Bunevacz or at his request,
16 confidential information developed by Bunevacz, Probst and Metlen. MpowerD has misused the
17 confidential information, as described above. MpowerD's misuse of the confidential information
18 that was provided to it, by or at the request of Bunevacz, has breached the Production Contract.
19        30.    Bunevacz asserts this claim for breach of contract to the extent any of the
20 confidential information provided to MpowerD does not constitute a trade secret whose
21 misappropriation is actionable under CAL-UTSA, or, as an alternative theory of relief and to the
22 extent permissible by law apart from and not in conflict with CAL-UTSA.
23        31.    On information and belief, as a direct and proximate result of MpowerD's breach
24 of contract, Bunevacz has suffered and will continue to suffer damages and lost profits in an
25 amount to be proven at trial.
26                           THIRD CAUSE OF ACTION
27              (Violation of Cal. Bus. & Prof. Code § 17200 et seq.; against all Defendants)
28        32.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 31

---
                                        9
                                    COMPLAINT

above as if set forth in full.

33.   On information and belief, Defendants' actions as described above constitute an "unlawful, unfair or fraudulent" business act or practices within the meaning of California Business & Professions Code Section 17200 et seq.

34.   On information and belief, Plaintiffs lost money or property, and defendants unjustly obtained money, property or other material benefit, as a direct and proximate result of Defendants' unlawful, unfair and fraudulent practices.

35.   Defendants have engaged, are engaging and propose to engage in unfair competition.

36.   Plaintiffs are entitled to injunctive relief as against Defendants' acts of unfair competition.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief; against MPowerD)

37.   Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 36 above as if forth in full.

38.   Section 1060 of the California Code of Civil Procedure provides in part that "Any person interested ... under a contract, or who desires a declaration of his or her rights or duties with respect to another ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the ... contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time."

39.     An actual controversy exists between Bunevacz and MpowerD as to the following issues, among others:

  A.     Whether a "covenant to not compete" that MpowerD wrote into the Production Agreement is void and unenforceable, as against Bunevacz, an individual and California resident, in light of California's strong public policy disfavoring such covenants, or if any part of it is not void, it must be given a limited and narrow construction; and

  B.     Whether MpowerD failed to receive any rights of ownership in the Proprietary Lantern Production Material, separate from the limited access to that material, by permission, which Bunevacz provided as alleged above.

40.     The Court should issue a declaration that the "covenant not to compete" that MpowerD wrote into the Production Agreement is void and unenforceable. The Court should further issue a declaration that MPowerD failed to receive any rights of ownership in the Proprietary Lantern Production Material.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against defendants as follows:

1.     That Plaintiffs be awarded damages for Defendants' misappropriation of the Lantern Trade Secrets, in an amount to be proven at trial;

2.     That Plaintiffs be awarded Defendants' profits and other unjust enrichment from their misappropriation of the Lantern Trade Secrets, in an amount to be proven at trial.

3.     That Plaintiffs be awarded a reasonable royalty pursuant to California Civil Code Section 3426.3(b).

4.     That the Court award exemplary damages to Plaintiffs and against Defendants under California Civil Code Section 3426.3(c).

11<br>COMPLAINT

5.      That provisional, temporary, preliminary and final injunctive relief be issued against Defendants preventing them from using the Lantern Trade Secrets or otherwise obtaining commercial advantage derived from their misappropriation of the Lantern Trade Secrets;

6.      That Plaintiff Bunevacz be awarded damages for MpowerD's breach of the Production Agreement, in an amount to be proven at trial;

7.      That Defendants be ordered to disgorge all unlawfully gained benefits, and restore to Plaintiffs all money and property acquired by them, as a result of their acts of unfair competition;

9.      That provisional, temporary, preliminary and final injunctive relief be issued against Defendants under Business & Professions Code Section 17203, preventing them from continuing their practices constituting unfair competition;

10.      That the Court declare the "Covenant to not Compete" written into the Production Agreement void and unenforceable.

11.      That the Court declare Defendants failed to receive any rights of ownership in the Proprietary Lantern Production Material, and may no longer assert otherwise;

12.      That the Court award Plaintiffs their reasonable attorneys' fees and costs as provided by applicable statutory law; and

13.      That the Court award Plaintiffs such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 5, 2013                         RINCON VENTURE LAW GROUP

By_____

K. Andrew Kent
Attorneys for Plaintiffs Sunlight Product
Technologies, Ltd. and David Joseph Bunevacz

12
COMPLAINT

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF VENTURA

800 South Victoria Avenue
Ventura , CA 93009
(805) 654-2609
WWW.VENTURA.COURTS.CA.GOV

## NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Case Number: 56-2013-00444550-CU-BT-VTA

Your case has been assigned for all purposes to the judicial officer indicated below.
A copy of this Notice of Case Assignment and Mandatory Appearance shall be served by the filing party on all named Defendants/Respondents with the Complaint or Petition, and with any Cross-Complaint or Complaint in intervention that names a new party to the underlying action.

| ASSIGNED JUDICIAL OFFICER | COURT LOCATION | DEPT/ROOM |
|---|---|---|
| Hon. Mark Borrell | Ventura | 43 |

| HEARING | MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | |

| EVENT DATE | EVENT TIME | EVENT DEPT/ROOM |
|---|---|---|
| 04/09/2014 | 08:15:00 AM | 22B |

## SCHEDULING INFORMATION

**Judicial Scheduling Information**
AT THE ABOVE HEARING IS MANDATORY.
Each party must file a Case Management Statement no later than 15 calendar days prior to the hearing and serve it on all parties. If your Case Management Statement is untimely, it may NOT be considered by the court (CRC 3.725).
If proof of service and/or request for entry of default have not been filed: At the above hearing you are ordered to show cause why you should not be compelled to pay sanctions and/or why your case should not be dismissed (CCP 177.5, Local Rule 3.17).

**Advance Jury Fee Requirement**
At least one party demanding a jury trial on each side of a civil case must pay a non-refundable jury fee of $150. The non-refundable jury fee must be paid timely pursuant to Code of Civil Procedure section 631.

**Noticed Motions/Ex Parte Matters**
To set an ex parte hearing, contact the judicial secretary in the assigned department. Contact the clerk's office to reserve a date for a law and motion matter.

**Telephonic Appearance**
Telephonic appearance at the Case Management Conference is permitted pursuant to CRC 3.670. In addition, see Local Rule 7.01 regarding notice to the teleconference provider. The court, through the teleconference provider, will contact all parties and counsel prior to the hearing.

Date: 11/08/2013

Clerk of the Court,
By: _Leslie Carlin_
Leslie Carlin, Clerk

VEN-FWR670

NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Exhibit "1"

# Production Contractor Agreement

This Agreement is entered into as of the __10__ day of __August__, 20__21__, between MpowerD Inc., a New York Benefit Corporation ("the Company") at 1 Little West 12th Street, New York, NY 10014  and DAVID BUNEVACZ  ("the Contractor") at 23810 Spinnaker Court, Valencia, CA 91355.

## RECITALS

Company is engaged in the business of creating solar lights.

Whereas, the Contractor has provided significant service to Company in the planning, research, development and manufacturing process for the Luci solar powered light.

Whereas, the Contractor desires to continue to facilitate the production process of the Luci solar powered light.

**NOW, THEREFORE**, in consideration of the above recitals and the mutual promises and conditions contained in this Agreement, the Parties agree as follows:

## 1. Independent Contractor.

**1.1**   Subject to the terms and conditions of this Agreement, the Company hereby engages the Contractor as an independent contractor to perform the services set forth herein, and the Contractor hereby accepts such engagement. This Agreement does not constitute a hiring by either party. This Agreement shall not render the Contractor an employee, partner, agent of, or joint venturer with the Company for any purpose. The Contractor is and will remain an independent contractor in his or her relationship to the Company. The Company shall not be responsible for withholding taxes with respect to the Contractor's compensation hereunder. The Contractor shall have no claim against the Company hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

**1.2**   The Contractor shall have an independent contractor status and not be an employee for any purposes, including, but not limited to, the application of the Federal Insurance Contribution Act, the Social Security Act, the Federal Unemployment Tax Act, the provisions of the Internal Revenue Code, the State Revenue and Taxation Code relating to income tax withholding at the source of income, the Workers' Compensation Insurance Code 401(k) and other benefit payments and third party liability claims.  The Contractor shall retain sole and absolute discretion in the manner and means of carrying out their activities and responsibilities under this Agreement.  This Agreement shall not be considered or construed to be a partnership or joint venture, and the Company shall not be liable for any obligations incurred by the Contractor unless specifically authorized in writing. The Contractor shall not act as an agent of the Company, ostensibly or otherwise, nor bind the Company in any manner, unless specifically authorized to do so in writing.

1

8/10/12

**1.3** All expenses related to the contractor's services under this Agreement shall be borne by the Contractor, not the Company.

## 2. Scope of Services.

**2.1** The Contractor shall manage quality control for the production and manufacturing of the Luci solar light. Company and Contractor shall set forth mutual agreed upon standards for quality ("Quality Standards") (e. g. description, specifications, data sheets, drawings, product samples). The Contractor shall ensure that the manufacturer is in compliance with the Quality Standards, and take the necessary action to communicate any non-compliance with Quality Standards, as well as take action to ensure swift and accurate compliance with Quality Standards at any stage of the production and manufacturing process.

**2.2** The Contractor shall manage inventory security by ensuring that all Luci solar lights make it from the manufacturer to Company, and/or its distributors and affiliates in proper working condition without damage of any kind.

**2.3** The Contractor shall manage the production process of Luci solar lights. Contractor shall lead the production process and act on behalf of the company to communicate with the manufacturer at every stage of the production and manufacturing process. Contractor, shall however gain permission of Company for any material decisions in the production and manufacturing process.

**2.4** The Contractor shall provide Company with regular updates and general advice as to the production and manufacturing process.

## 3. Term.

This engagement shall commence upon execution of this Agreement and shall continue in full force and effect until two years after the date of this Agreement. The Agreement may only be extended thereafter by mutual agreement, unless terminated earlier by operation of and in accordance with this Agreement.

## 4. Compensation.

**4.1** As full compensation for the services rendered pursuant to this Agreement, the Company shall pay the Contractor:

a sum equal to $0.40 per Luci light for the first 200,000 units sold during the term of this agreement;

thereafter, a sum equal to $0.25 per Luci light sold by the Company during the term of this agreement.

2

8/10/12

**4.2** Company shall make the above payments to Contractor on a quarterly basis by the 10th day of January, April, July and September.

**4.3** Company shall have no obligation to pay Contractor for sales occurring after the term of this Agreement.

## 5. Written Reports.

**5.1** Contractor shall compile a quarterly written report for the Company consisting of number of units produced, manufacturer, cost of units produced, cost of components and raw materials as well as any other information Company shall reasonably request.

## 6. CONFIDENTIAL INFORMATION

**6.1** Each Party agrees and undertakes that during the term of this Agreement and thereafter it shall keep confidential and shall not use for its own purposes all information of a confidential nature (including, without limitation, information relating to a Party's business, know-how, processes, product information and trade secrets) which may become known to that Party from the other Party ("Confidential Information"),

**6.2** Either Party's Confidential Information shall be maintained in strictest confidence by the other Party and shall be treated as the other Party would treat its own Confidential Information. It may only be used for the sole purpose of assisting that other Party in adequately discharging its obligations hereunder. Such Confidential Information shall not be disclosed to any third party, without prior written consent from the other Party or unless required by local law. This obligation shall survive the termination of this Agreement for seven (7) years from the end of the contract.

## 7. Covenant to Not Compete.

**7.1** The Contractor hereby agrees that during the course of the Agreement and for a period of twenty four months immediately following the expiration or termination of the Agreement for any reason, whether with or without good cause or for any or no cause, at the option either of the Company or the Independent Contractor, with or without notice, the Independent Contractor will not compete with the Company and its successors and assigns, without the prior written consent of the Company.

The term "not compete" as used herein shall mean that the Independent Contractor shall not, without the prior written consent of the Company, (i) serve as a partner, employee, Company, officer, director, manager, agent, associate, investor, or otherwise for, (ii) directly or indirectly, own, purchase, organize or take preparatory steps for the organization of, or (iii) build, design, finance, acquire, lease, operate, manage, invest in, work or consult for or otherwise affiliate with, any business in competition with or otherwise similar to the Company's business.

This shall cover the Independent Contractor's activities in every part of the Territory in which the Independent Contractor may conduct business during the term of the

3

8/16/12

Agreement as set forth above. "Territory" shall mean (i) all counties in the State of New York, (ii) all other states of the United States of America and (iii) all other countries of the world; provided that, with respect to clauses (ii) and (iii) in this paragraph, the Company derives at least five percent (5%) of its gross revenues from such geographic area prior to the date of the expiration or termination of the Agreement. The Independent Contractor further acknowledges the time, geographic, and scope limitations of his or her obligations are reasonable, especially in light of the Company's desire to protect its Confidential Information, and that he or she will not be precluded from gainful employment if he or she is obligated not to compete with the Company during the period and within the Territory.

## 8. Right to Injunction.

**8.1** The parties hereto acknowledge that the services to be rendered by the Contractor under this Agreement and the rights and privileges granted to the Company under the Agreement are of a special, unique, unusual, and extraordinary character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in any action at law, and the breach by the Contractor of any of the provisions of this Agreement will cause the Company irreparable injury and damage. The Contractor expressly agrees that the Company shall be entitled to injunctive and other equitable relief in the event of, or to prevent, a breach of any provision of this Agreement by the Contractor. Resort to such equitable relief, however, shall not be construed to be a waiver of any other rights or remedies that the Company may have for damages or otherwise. The various rights and remedies of the Company under this Agreement or otherwise shall be construed to be cumulative, and no one of the them shall be exclusive of any other or of any right or remedy allowed by law.

## 9. Termination.

**9.1** The Company may terminate this Agreement at any time by 10 working days' written notice to the Contractor. In addition, if the Contractor is convicted of any crime or offense, fails or refuses to comply with the legal or ethical standards, written policies or reasonable directive of the Company, is guilty of serious misconduct in connection with performance hereunder, or materially breaches provisions of this Agreement, the Company at any time may terminate the engagement of the Contractor immediately and without prior written notice to the Contractor.

## 10. Indemnification.

**10.1** Contractor shall indemnify, defend and hold harmless the Company and its respective directors, officers, managers, employees and agents, from and against any and all third party claims, suits, demands, actions and proceedings, wherever brought and however denominated (any of the foregoing being referred to herein as a "Claim"), including all damages, penalties, fines, costs, expenses, liabilities and settlements in connection therewith and reasonable outside attorneys' fees and litigation expenses ("Damages") arising from or related to any breach of the Contractor's obligations or any negligence or willful misconduct under this Agreement.

4

**11. Miscellaneous.**

**11.1**   All of the provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, if any, successors, and assigns.

**11.2**   The laws of the state of New York shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto.

**11.3**   Any controversies arising out of the terms of this Agreement or its interpretation shall be settled in New York in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof.

**11.4**   Section headings are not to be considered a part of this Agreement and are not intended to be a full and accurate description of the contents hereof.

**11.5**   Waiver by one party hereto of breach of any provision of this Agreement by the other shall not operate or be construed as a continuing waiver.

**11.6**   The Contractor shall not assign any of his or her rights under this Agreement, or delegate the performance of any of his or her duties hereunder, without the prior written consent of the Company.

**11.7**   Any and all notices, demands, or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service. If such notice, demand or other communication is given by mail, such notice shall be conclusively deemed given five days after deposit thereof in the United States mail addressed to the party to whom such notice, demand or other communication is to be given as follows:

> *If to the Contractor:*
> David David Bunevacz
> 23810 Spinnaker Court,
> Valencia, CA 91355.
>
> *If to the Company:*
> MpowerD Inc.
> 1 Little West 12th Street
> New York, NY 10014

Any party hereto may change its address for purposes of this paragraph by written notice given in the manner provided above.

**11.8**   No amendment, change or modification of this Agreement shall be valid unless in writing signed by the parties hereto.

5

8/10/12

**11.9** This document and any exhibit attached constitute the entire understanding and agreement of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

**11.10** If any provision of this Agreement, or any portion thereof, is held to be invalid and unenforceable, then the remainder of this Agreement shall nevertheless remain in full force and effect.

6

4/10/12

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and year first written above. The parties hereto agree that facsimile signatures shall be as effective as if originals.

MpowerD Inc.

By:_____ [name]   Jacques-Philippe Piverger
_____ [title or position]   CEO

David Bunevacz

By:_____                            8/10/2012
David Bunevacz

7

Exhibit "2"

# ASSIGNMENT OF RIGHTS TO AND AMENDMENT OF

## PRODUCTION CONTRACTOR AGREEMENT

THIS **ASSIGNMENT OF RIGHTS TO AND AMENDMENT OF PRODUCTION CONTRACTOR AGREEMENT** ("Agreement") is dated as of _March 21_, 2013 between David Bunevacz, an individual ("Assignor"); Anthony Barron, an individual ("Assignee"); and MpowerD Inc., a New York Benefit Corporation ("MpowerD"), with respect to that certain Production Contractor Agreement dated August 10, 2012 by and between Assignor and MpowerD ("Development Agreement"). Assignor, Assignee and MpowerD are hereinafter collectively referred to as the "Parties". Terms not expressly defined herein shall have the meaning assigned to them in the Development Agreement.

WHEREAS, the terms of the Development Agreement provide for Assignor to facilitate the production of the Luci solar powered light ("Luci light");

WHEREAS, Assignee has expended and shall continue to expend significant efforts in assisting Assignor with the Luci light production process, including the sourcing of materials, engineering and manufacturing selection and oversight;

WHEREAS, the Assignor and Assignee desire to acknowledge the efforts of Assignee and to compensate Assignee for such efforts consistent with the terms of the Development Agreement as amended herein;

NOW THEREFORE, that in consideration of good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

**1. Terms of Amendment.** The Development Agreement is hereby amended as follows:

1.1 Section 3 of the Development Agreement is hereby amended by deleting the first sentence and replacing it with the following: "The term of this Agreement shall commence upon execution of this Agreement and shall continue in full force and effect until five (5) years after the date of this Agreement, and shall automatically renew for successive one (1) year periods unless terminated by either Party as otherwise provided under Section 9.1 of this Agreement."

1.2 Section 4.1 of the Development Agreement is hereby deleted and the following is inserted in its stead:

"4.1 As full compensation for the services rendered pursuant to this Agreement, Company shall pay Contractor:

a sum equal to $0.40 per Luci light for the first 200,000 units manufactured and shipped in accordance with instructions provided by Company during the term of this Agreement;

thereafter, a sum equal to $0.25 per Luci light manufactured and shipped in accordance with instructions provided by Company during the term of this Agreement."

1.4    Section 9.1 of the Development Agreement is hereby amended by a deletion of the first sentence set forth therein.

2.    Assignment.

2.1    Assignment of Compensation.  Assignor hereby grants, transfers, conveys and assigns to Assignee a one-third (1/3) interest in and to all payments made or to be made to Assignor pursuant to Section 4.1 of the Development Agreement ("Assigned Payments").

2.2    MpowerD Consent.  Pursuant to Section 11.6 of the Development Agreement, MpowerD provides its consent to the Assignment, as indicated by its signature below.

3.    Payments; Reports; Audit Rights.

3.1    Payments.  Assignor shall pay Assignee the Assigned Payments within five (5) days of his receipt of same pursuant to Section 4.2 of the Development Agreement.

3.2    Reports.  Each payment made pursuant to Section 3.1 above by shall be accompanied by the quarterly report provided by Contractor to MpowerD pursuant to the Development Agreement, which report shall identify the particulars as to any and all shipments of Luci lights relating to such payment in such reasonable detail as is sufficient for Assignee to confirm the appropriateness of the compensation received

3.3    Audit Rights.  Assignor shall maintain such records, information and documentation as may be reasonably required to document compliance with the terms and conditions of this Agreement, and shall exercise his best efforts to secure such records and information from the relevant manufacturer.  Assignee shall have the right, at its sole cost and expense (except as otherwise provided below), to audit any and all pertinent documents, activity reports, or other records that are reasonably necessary to verify Assignor's compliance with the terms and conditions of this Agreement, including such documents, reports or other records received by Assignor from Company.  Any such audit shall be performed no more than once during any calendar year, during normal business hours, and upon no less than five (5) business days advance notice.  Assignor shall provide to Assignee's auditors and representatives any assistance they may reasonably require in connection with such audits and inspections.  Should the audit reveal a discrepancy in Luci light units manufactured and shipped of more than five percent (5%) in favor of Assignee, then Assignor shall, in addition to paying any amounts owed to Assignee as a result of the discrepancy, pay Assignee's reasonable expenses associated with

such audit.  Any payments determined to be due and owing from either party to the other as a result of an audit performed pursuant to this Section 4.5 shall be paid within five (5) business days of such determination.

4.  **Effective Date.**  The Parties agree that the effective date of this Agreement shall be August 10, 2012 ("Effective Date").

5.  **Term; Termination.**  The term of this Agreement shall be co-extensive with the term of the Development Agreement, as that term is defined in Section 3 of the Development Agreement, unless earlier terminated pursuant to the written agreement of the Parties.

6.  **Notices.**  Any and all notices required or desired to be given hereunder shall be in writing and shall be effected by personal delivery, telecopier, overnight courier service or by registered or certified mail, return receipt requested.  Notices delivered personally or by telecopier or overnight courier service shall be deemed communicated as of actual receipt; mailed notices shall be deemed communicated forty-eight (48) hours after deposit in the U.S. mail, first-class postage prepaid, to be addressed as set forth below:

|  |  |
|---|---|
| "Assignor": | David Bunevacz |
|  | 23810 Spinnaker Court |
|  | Valencia, CA  91355 |
|  |  |
| "Assignee": | Anthony Barron |
|  | 344 Hauser Blvd., Suite 411 |
|  | Los Angeles, CA 90036 |
|  |  |
| "Corporation": | Jacques-Phillipe Piveiger |
|  | Chief Executive Officer |
|  | MpowerD Inc. |
|  | 1 Little West 12th Street |
|  | New York, NY 10014 |

7.  **Entire Agreement.**  This Agreement, together with the Development Agreement as amended herein, contains the entire agreement between the Parties related to the subject matter hereof.

8.  **No Amendment.**  No amendment hereof or supplement or other modification hereto, and no consent to, or waiver, discharge, or release of, any term or provision or breach hereof, shall be valid or effective unless such amendment, supplement, or other modification, or such consent, waiver, discharge, or release, is in writing, expressly refers hereto, and is signed by the Party to be bound thereby.

9.   **No Third Party Beneficiaries.** This Agreement shall be binding upon, and inure to the benefit of the Parties and their respective successors and assigns. Nothing in this Agreement is intended to or shall create any third-party beneficiaries, whether intended or incidental.

10.   **Severability.** If any term or other provision hereof is determined by any court of competent jurisdiction to be invalid, illegal, or unenforceable in whole or in part by reason of any applicable law or public policy, and such determination becomes final and non-appealable, such term or other provision shall remain in full force and effect to the fullest extent permitted by law, and all other terms and provisions hereof shall remain in full force and effect in their entirety.

11.   **Mutual Cooperation.** The Parties shall promptly take such actions and execute such documents as may be reasonably necessary and/or appropriate to carry out the terms and the intent of this Agreement.

12.   **Attorney Fees.** In the event that it becomes necessary for any Party to obtain the services of any attorney to enforce the provisions of this Agreement against another Party who has breached any obligation hereunder, or who is in default under the provisions hereof, the defaulting Party shall pay the reasonable attorney's fees of the non-defaulting Party. In the event of any action for breach of or to enforce the provisions of this Agreement, the prevailing Party shall be entitled to recover from the unsuccessful Party reasonable attorney's fees, costs, disbursements and other litigation expenses in such amounts as may be awarded by a court of competent jurisdiction.

13.   **Governing Law.** This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California.

14.   **Counterparts.** This Agreement may be executed in any number of counterparts and by the Parties in separate counterparts, each of which when executed shall be deemed to be an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart hereof via facsimile shall be as effective as delivery of a manually executed counterpart hereof.

**IN WITNESS WHEREOF** the Parties have executed this Agreement as of the date first referenced above.

[Signature on following page]

"Assignor"

_____
David Bunevacz

"Assignee"

_____
Anthony Barron

MpowerD Inc.,
a New York Benefit Corporation

By: _____
Jacques-Phillipe Piveteau,
Chief Executive Officer

## DECLARATION OF CAMERON A. HOPKINS, ESQ.

I, Cameron A. Hopkins, declare as follows:

1.      I am an attorney at law duly admitted to practice before all the courts of the State of California.  I am the principal of the Law Offices of Cameron A. Hopkins, APC, attorneys of record for defendants.

2.      I have personal knowledge of the facts contained within this Declaration and can testify as to the facts in court.   I give this Declaration in support of Defendants' Motion to Dismiss or Stay Action ("Motion").

3.      According to the Court's docket, Plaintiffs filed their Complaint on November 12, 2013.  On December 11, 2013, counsel for plaintiffs and defendants stipulated to extend the date by which defendants were to file their responsive pleading through December 30, 2013 (a total of 45 days from the date that the Complaint was served according to the Court's docket).   A true and correct copy of an e-mail confirming the extension of time is attached to the Motion as Exhibit 3.

4.      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 30th day of December, 2013, at Los Angeles, California

_____
Cameron A. Hopkins